IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DAVID RAY SLATER,

      Movant,

v.                                     Case No. 2:05-cv-00737
                                       Case No. 2:04-cr-00049

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant David Ray Slater's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (docket sheet document # 37). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about November 26, 2001, Defendant was convicted in Kanawha County Circuit Court of one count of sexual abuse by a parent, guardian, or custodian, in violation of West Virginia Code § 61-8D-5, which is a felony offense. State v. Slater, Case No. 01-F-266. Defendant was placed on probation for a period of five years, effective March 5, 2002. Based upon his felony conviction, Defendant lost his right to carry a firearm. Defendant was on probation at the time of the instant offense, and his right to

carry a firearm had not been restored.

On November 25, 2003, West Virginia State Conservation Officer First Class J.C. Armstead received information from Steven Eshenaur that Defendant was riding around on an All-Terrain Vehicle ("ATV") near Mr. Eshenaur's house at Trace Fork in Kanawha County, and that he was carrying a rifle on his back.  Mr. Eshenaur was aware that Defendant was a convicted felon and was not permitted to have a firearm.

Officer Armstead drove to the area to investigate the allegations and observed Defendant riding an ATV, wearing an orange hunting vest, and carrying a rifle on his back.  Officer Armstead lost sight of Defendant at some point, so he proceeded to Defendant's residence.  Upon arrival at Defendant's home, Officer Armstead was met by Defendant, who was no longer wearing the orange vest, and did not have the firearm with him.

Defendant was placed under arrest.  When questioned about the firearm and the vest, Defendant initially denied having the items. Subsequently, however, Defendant stated that the firearm was at his brother, Gary's, house.  Officer Armstead then went to Gary Slater's house and retrieved the firearm - a loaded Marlin, Model 25MN 22-caliber magnum rifle, serial number 03388317, with a scope and a sling attached.  Defendant told Officer Armstead that, while he was carrying the firearm, it was not loaded and he had removed the firing mechanism.

Officer Armstead filed a complaint in Kanawha County Magistrate Court on November 25, 2003, charging Defendant with being a felon in possession of a firearm. Defendant was arraigned before a Kanawha County magistrate on that same date and was released on bond. On March 17, 2004, Defendant was indicted by a federal grand jury in a single-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On May 18, 2004, Kanawha County Adult Probation Officer James F. Dunlap hand-delivered to Defendant a "Notice of Final Hearing for Violation of Probation." (# 47, Ex. A). The same notice was provided to Defendant by the United States on June 1, 2004, as part of its "Second Supplemental Response of the United States of America to Defendant's Standard Discovery Request and Request of the United States for Reciprocal Discovery." (# 14).

On August 18, 2004, Defendant pled guilty in this federal court to the one-count indictment, pursuant to a written plea agreement. (## 21, 22). On October 18, 2004, Kanawha County Circuit Judge Charles E. King, Jr., entered an Order revoking Defendant's state probation. (# 47, Ex. B). The order states that Defendant acknowledged receipt of the Notice of Violation dated May 4, 2004, and that Defendant admitted to the allegation that he had possessed a firearm in violation of federal law, and admitted to violating the conditions of his probation. (Id. at 1-2). The

3

state court allowed Defendant to remain on bond until his federal sentencing.  (Id. at 2-3).

Defendant was sentenced in this court on February 23, 2005, after the United States Supreme Court had issued its decision in United States v. Booker, 125 S. Ct. 738 (2005), which held that the United States Sentencing Guidelines are advisory in nature.  In arriving at Defendant's sentence, the presiding District Judge found a sufficient basis to warrant a five-level reduction in the total offense level, based upon Defendant's diminished mental capacity.[1]  Thus, Defendant's sentencing range was reduced from 27-33 months to 12-18 months.  (# 47, Ex. E at 21-22).  Defendant was sentenced to 14 months of imprisonment, followed by a three-year term of supervised release.  (Id. at 25-26; # 31, Judgment in a Criminal Case, entered on Feb. 28, 2005).

On April 5, 2005, Defendant appeared before Judge King for sentencing on his state probation violation.  Judge King sentenced Defendant to serve an indeterminate term of not less than 10 years,

---

[1]  During the sentencing hearing, the presiding District Judge mistakenly stated that Defendant would receive a four-level reduction in the total offense level from a 17 to a 13, to result in a sentencing range of 12-18 months.  However, in order to be eligible for a sentencing range of 12-18 months, with a Criminal History Category of II, Defendant's total offense level was required to be 12.  See U.S.S.G. Sentencing Table.  In a telephone conference with counsel for Defendant and the United States, the presiding District Judge corrected his error and stated that he had intended to reduce Defendant's total offense level by five levels, from a 17 to a 12, resulting in a sentencing range of 12-18 months. This correction was memorialized in a written order entered on February 28, 2005. (# 30).

nor more than 20 years on his conviction for sexual abuse, which was to run concurrent to his 14-month federal sentence for being a felon in possession of a firearm. (# 47, Ex. C).

Defendant did not appeal any aspect of his federal conviction or sentence. Rather, on September 7, 2005, Defendant filed the instant section 2255 motion, in which he contends that his guilty plea to being a felon in possession of a firearm was involuntary and unknowing, and that he received ineffective assistance of counsel in his federal criminal proceedings. (# 37). Defendant also filed a Memorandum of Law in support of his motion. (# 38).

On November 10, 2005, the United States filed a response to Defendant's section 2255 motion (# 47), asserting that Defendant is entitled to no relief on his claims therein. Defendant has not filed a reply brief. The matter is now ripe for adjudication.

## ANALYSIS

### A.   Involuntary and/or Unknowing Guilty Plea.

In Ground One of his section 2255 motion, Defendant asserts that his appointed counsel, Assistant Federal Public Defender Edward H. Weis, "convinced Defendant to enter into a guilty plea on a weapons violation and said weapon was never in Defendant's possession, nor recovered from Defendant." (# 37 at 5, Ground One). In Ground Two, Defendant asserts that his diminished mental capacity "made it very difficult to fully understand the nature and seriousness of the charge lodged against him and the penalty he

5

faced upon pleading guilty." (Id., Ground Two).  In Ground Four,
Defendant asserts that Mr. Weis "coerced Defendant to enter a plea
of guilty knowing the ramifications of a guilty plea would lead to
Defendant's violation of state probation, where the Defendant will
now have to serve a 10 to 20 year sentence based upon his guilty
plea." (Id. at 6, Ground Four).  The undersigned construes all of
these allegations as a claim that his guilty plea was unknowing and
involuntary.

The United States' response asserts that Defendant's
allegations are clearly refuted by his sworn statements at his plea
hearing.  (# 47 at 6).  The response further states:

> At his plea hearing, defendant admitted that he had
> possessed the firearm as charged in the indictment.  See
> Plea Transcript pp. 49-51.  Defendant further admitted
> that he had not been made any promises by anyone of
> leniency, and that he had not been threatened by anyone
> in any way by means of intimidation or coercion or
> pressure to induce him to enter his plea of guilty
> against his will.  See Plea Transcript pp. 43, 45.
> Defendant also admitted that he was satisfied with the
> representation he received from Mr. Weis, and that he
> felt that Mr. Weis has represented him fully and fairly.
> See Plea Transcript p. 44.  Finally, defendant admitted
> that he was entering his plea of guilty voluntarily and
> of his own free will.  See Plea Transcript p. 45.

(Id.)

Defendant was charged with a violation of 18 U.S.C. §§
922(g)(1) and 924(a)(2).  Section 922(g)(1) provides:

> (g) It shall be unlawful for any person -
>
>> (1) who has been convicted in any court of, a crime
>> punishable by imprisonment for a term exceeding one
>> year;

6

to . . . possess in or affecting interstate commerce, any firearm or ammunition;

18 U.S.C. § 922(g)(1).  Section 924(a)(2) provides that a person who violates section 922(g)(1) shall be fined, imprisoned for not more than 10 years, or both.  18 U.S.C. § 924(a)(1).

During his plea hearing, Defendant admitted that he possessed the firearm, but asserted that he had removed the ammunition and the firing mechanism before carrying the gun with him.  (# 47, Ex. A at 13).  It is well-settled, however, that "an inoperable weapon falls within [18 U.S.C.] § 921(a)(3)'s definition of a 'firearm.'" United States v. Rivera, 415 F.3d 284, 286 (2d Cir. 2005); see also, United States v. Willis, 992 F.2d 489, 491 n.2 (4th Cir. 1993)(firearm that is actually-operable at the time of possession is not required for conviction, so long as it was "designed to" or could "readily be converted" to fire).

Accordingly, there was a factual basis for Defendant's plea, and Defendant's claim in Ground One of his section 2255 motion that "said weapon was never in Defendant's possession, nor recovered from Defendant" is disingenuous and contradicted by his statements under oath at the plea hearing.

Turning to Defendant's claims that Defendant's plea was involuntary or unknowing, and that Mr. Weis coerced Defendant into entering his plea, the following colloquy took place during the plea hearing:

7

THE COURT:      Now then, have you discussed with your attorney, Mr. Weis, the charges contained in the indictment?  Have you -- no, you let me clear up anything so we'll be sure that it is clear on the record.  Have you discussed with Mr. Weis the charges contained in the indictment in this case?

THE DEFENDANT: Yes, sir.

THE COURT:      Did you tell him all the facts?

THE DEFENDANT: Yes, sir.

THE COURT:      Has he counseled and advised you as to the nature of the charge against you in the indictment?

THE DEFENDANT: Yes, sir.  He said if I went to trial, I wouldn't have a chance.

THE COURT:      And is it fair to say then that he's always counseled you and advised you about any possible defenses you might have to those charges?

THE DEFENDANT: Yes, sir.

THE COURT:      Do you really understand then the nature of the charge set out in the indictment?

* * *

THE DEFENDANT: Yes, sir.

THE COURT:      Are you ready to enter a plea to that charge?

THE DEFENDANT: Yes, sir.

(# 47, Ex. A at 19-20).  Special Assistant United States Attorney Lisa Johnston then read the entirety of the plea agreement into the record in the Defendant's presence.  (Id. at 22-26).

The colloquy then continued:

THE COURT:        Do you understand everything in that
                  agreement, Mr. Slater?

THE DEFENDANT: Yes, sir.

THE COURT:        Anything about it you don't understand?

THE DEFENDANT: I don't know anything I didn't quite
                  understand.

THE COURT:        I didn't quite understand what you just
                  said.

THE DEFENDANT: The last part.

THE COURT:        Is there anything about it you don't
                  understand?

THE DEFENDANT: Oh, I understand it.

(Id. at 26).

Defendant then indicated that he signed the plea agreement so

that Mr. Weis "would quit asking him when he was going to sign it."

(Id. at 28).  However, Defendant further clarified that he did not

wish to go to trial, and that he did wish to plead guilty:

THE COURT:        Is it still the case that you haven't
                  decided whether or not you wish to go to
                  trial?

THE DEFENDANT: I don't want to go to trial.

THE COURT:        Is it the case that instead of going to
                  trial you do wish to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT:        To count 1?

THE DEFENDANT: Yes, sir.

```
THE COURT:        And that you wish to enter that plea
                  pursuant to this plea agreement, is that
                  correct?

THE DEFENDANT: Yes, sir.

THE COURT:        Is it the case then that you do approve
                  of the agreement now?

THE DEFENDANT: Yes, sir.

THE COURT:        And wish to go forward with this plea
                  proceeding; is that correct?

THE DEFENDANT: Yes, sir.

                           * * *

THE COURT:        What is your plea to the indictment in
                  this case?

THE DEFENDANT: It's having an unloaded firearm, that's
                  what I'm pleading guilty to, and plus
                  violating my probation.
```

(<u>Id.</u> at 28-29).

The presiding District Judge then informed Defendant of the various constitutional rights he was giving up by pleading guilty, confirmed that Defendant understood he was waiving each of those rights, and informed Defendant of the consequences of his plea, including the possible punishment he faced. (<u>Id.</u> at 32-43). The presiding District Judge also confirmed with Defendant that no one had threatened, coerced or intimidated him into entering into the guilty plea, and that he had not been promised any leniency as a result of entering into the plea. (<u>Id.</u> at 43-45). Defendant further affirmed that he believed that Mr. Weis had represented him fully and fairly. (<u>Id.</u>)

Prior to accepting Defendant's guilty plea, the presiding District Judge asked the following of Defendant:

> THE COURT:      Do you then offer to enter a plea of guilty voluntarily and of your own free will?
>
> THE DEFENDANT: Yes.
>
> THE COURT:      Do you do that with a full understanding that you will be waiving your constitutional rights the court has told you about, including your right to a fair and speedy trial by jury?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:      And do you do it also with the full knowledge of the consequences of your plea, including the possible penalty that the court may impose?
>
> THE DEFENDANT: Yes, sir.

(Id. at 45-46).

As noted by the United States in its response:

> The Fourth Circuit Court of Appeals recently held in United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), that a defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. Defendant's statements made under oath during a Rule 11 plea colloquy carry such a strong presumption, that "they present a formidable barrier in any subsequent collateral proceedings." United States v. Lemaster, 403 F.3d at 221 (citing United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004). Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." United States v. Lemaster, 403 F.3d at 221.

11

(# 47 at 7).

Based upon a exhaustive review of Defendant's plea hearing transcript, the undersigned proposes that the presiding District Judge **FIND** that, despite Defendant's diminished mental capacity, which the presiding District Judge took into account in reducing Defendant's sentence, Defendant was, in accordance with the requirements of Rule 11 of the Federal Rules of Criminal Procedure, thoroughly advised of his constitutional rights, advised that he was waiving those rights by pleading guilty, and advised of the consequences of his plea. The presiding District Judge found that Defendant understood those rights and the fact that he was waiving them. Furthermore, the presiding District Judge properly found that there was a factual basis for Defendant's plea.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant's guilty plea was knowing and voluntary, and that there is no evidence that Defendant was coerced into entering into his guilty plea. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Defendant cannot demonstrate that he did not "fully understand the nature and seriousness of the charge lodged against him and the penalty he faced upon pleading guilty," as stated in Ground Two of his section 2255 motion, or that "he did not fully understand what was transpiring," as stated in Ground Three of the motion.

12

**B.    Ineffective Assistance of Counsel.**

Defendant's section 2255 motion further asserts that Defendant was unaware that the entry of his guilty plea would result in the revocation of his state probation, and the ensuing 10 to 20 year sentence he must serve on his state sexual abuse charge.  (# 37 at 6, Ground Four).    Defendant's  motion  further  asserts  that "defendant would not have entered into a guilty plea, knowing that to do so, would automatically cause defendant untold grief and misfortune.   That Attorney Wise [sic; Weis] convinced him this would  not  affect  his  probation."    (Id.)    Furthermore,  in Defendant's Memorandum of Law, Defendant intimates that, had Mr. Weis informed Defendant of the ability to enter into a plea of <u>nolo contendere</u> or an <u>Alford</u> plea, he "could have got some kind of justice." (# 38 at 2-3).

The  undersigned  construes  these  allegations  as  a  claim  of ineffective assistance of counsel.   As stated previously herein, in the case of a guilty plea, to obtain collateral relief based upon a claim of ineffective assistance of counsel, Defendant must show that Mr. Weis provided incorrect advice and that, but for the incorrect advice, Defendant would not have pled guilty.   <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Fields v. Attorney General</u>, 956 F.2d 1290, 1297 (4th Cir. 1992).

The United States' response on this issue states:

> Here, defendant claims that his plea of guilty led
> to the revocation of his state probation.  He claims that

13

his defense counsel did not explain this to him, and that he would not have entered into the plea agreement if he had known the collateral effect of a plea to the indictment.

Defendant's plea of guilty to the indictment did not cause the revocation of his state probation.  The facts underlying his indictment served as the basis on which his probation was revoked.  See Affidavit of Edward H. Weis attached hereto as Exhibit F, at para. 6.  Moreover, defendant's probation was likely to be revoked regardless of the instant federal prosecution.  Id. at para. 8.

While the record here is clear that defendant had abundant notice and counsel concerning his impending probation revocation [footnote omitted], it is not necessary that a defendant be advised of all collateral consequences of his plea, or all "possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction of a plea of guilty."  See Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1365-66 (4th Cir. 1973)(internal citations omitted).  A direct consequence is one that has a "definite, immediate, and largely automatic" effect on the range of the defendant's punishment.  Cuthrell, 475 F.2d at 1366.  The only consequences considered direct are the maximum prison term and fine for the offense charged.  United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir. 1991), cert. denied, 502 U.S. 1110 (1992).

Clearly, revocation of defendant's state probation was not an immediate and automatic consequence of pleading guilty to his federal offense.  "A sentence of imprisonment upon revocation of probation is not generated by the plea but by the defendant's own unwillingness or inability to conform to the restrictions imposed as part of probation."  Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir.1995), cert. denied, 516 U.S. 1059 (1996).  In this case, there was overwhelming information to indicate that the defendant was aware that his state probation would be revoked for his violation of the terms of his probation arising from the facts underlying the indictment.

(# 47 at 9-11).

14

The United States has offered an affidavit from Mr. Weis which indicates as follows:

4.   I was aware that Mr. Slater was serving a sentence of probation in Kanawha County, West Virginia.

5.   I discussed the impact of a federal conviction on the then-pending state violation of probation petition with Mr. Slater and with Paula Cunningham, Esq. and John Sullivan, Esq., the assistant Kanawha County public defenders who were representing Mr. Slater in Kanawha County Court on the state violation of probation charges.

6.   Specifically, I discussed with Mr. Slater at some length and on at least five occasions prior to the entry of the guilty plea the fact that his probation in Kanawha County was likely to be revoked because of the facts upon which the Federal Indictment was based.  Because I was aware of Mr. Slater's limited mental abilities, Thelma Slater, Mr. Slater's wife, was included in some of these discussions.  I did this so that Mrs. Slater could explain the reasons for the course of action described in paragraph 9 below, to Mr. Slater should he forget the explanation given to him in our meetings.

7.   I communicated extensively with Mr. Slater and Paula Cunningham and John Sullivan, Mr. Slater's state-appointed public defenders, to determine the best course of action with respect to the federal prosecution in light of the likely state probation violation.  On October 4, 2004, Mr. Slater, Paula Cunningham and I met.  One of the items we discussed was the best way to secure concurrent sentences in the state and federal courts.

8.   I determined through consultation with Mr. Sullivan that revocation of Mr. Slater's state probation was inevitable regardless of the disposition of the charges contained in the Federal Indictment.

9.   Because I had also determined that Mr. Slater had no meritorious legal defense to the charge in the Federal Indictment, special care was taken to see that Mr. Slater's state revocation hearing was

> scheduled after Mr. Slater's plea and sentencing
> hearing on the charges contained in the Federal
> Indictment to, among other things, increase the
> likelihood that the time he was sentenced to serve
> for the state probation revocation would run
> concurrently with his service of federal prison
> sentence.

(# 47, Ex. F). Defendant has offered no evidence to refute Mr. Weis's affidavit.

It is clear from the record before this court that Defendant was fully aware of the impending revocation of his state probation, whether or not he pled guilty to the federal charge against him. Furthermore, in light of such knowledge, and the statements Defendant made under oath during his plea hearing, Defendant cannot demonstrate that he would not have pled guilty, had he known of the alleged collateral effect on his state probation revocation.

Furthermore, to the extent that Defendant has asserted that Mr. Weis should have counseled him about entering a plea of nolo contendere, or a plea under North Carolina v. Alford, 400 U.S. 25 (1970), which allows a defendant to plead guilty while maintaining his or her innocence, there is absolutely no evidence to suggest that the United States would have been willing to enter into such a plea agreement. Nor is there a reasonable probability that the entry of such a plea would have altered Defendant's probation revocation.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Mr.

16

Weis's advice concerning Defendant's guilty plea fell below an objective standard of reasonableness under the circumstances; nor can Defendant demonstrate that he was prejudiced by that advice.

### C. Defendant's other claims.

In his Memorandum of Law (# 38), Defendant makes several other assertions, in passing.   On page four, paragraph nine of the memorandum, Defendant asserts "Government violates a defendant's constitutional right to due process when it withholds material exculpatory evidence from the defense.  (See cases below)."  (# 38 at 4).  Defendant offers no further support for this claim, and has provided no factual basis concerning the failure of the United States to provide him with exculpatory evidence.   Accordingly, Defendant cannot demonstrate a violation of his right to due process on this basis.

In paragraph 12 on page five of the memorandum, Defendant appears to be asserting that Mr. Weis failed to raise a claim concerning an illegal search and seizure because, at the time of his arrest, Defendant was visiting a relative and the government did not have a warrant to search that property.  (# 38 at 5).  This claim is without merit because Defendant lacks standing to raise a Fourth Amendment search and seizure claim concerning property which he did not own.  Therefore, an allegation that Defendant's counsel failed to raise an non-meritorious claim must also fail.

17

In his memorandum, Defendant also mentions, in passing, that "a criminal defendant [may] succeed on an ineffective assistance of counsel claim under the Sixth Amendment if he shows that an actual conflict of interest adversely affected his lawyer's performance." (# 38 at 6, ¶ 14).   Defendant has not demonstrated that Mr. Weis had any actual conflict of interest that adversely affected the outcome of Defendant's criminal proceedings.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (# 37).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted for good cause shown.

18

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant/Defendant, David Ray Slater, and to counsel of record.

|  |  |
|---|---|
| February 21, 2006 | Mary E. Stanley |
| Date | Mary E. Stanley |
|  | United States Magistrate Judge |